UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL ROBERTS AND | : | NO.: 3:13CV00435 (SRU) |
| ANNETTE ROBERTS | : | |
| | : | |
| v. | | |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | |
| COMPANY | : | SEPTEMBER 2, 2016 |

**REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The defendant, Liberty Mutual Fire Insurance Company ("Liberty"), hereby submits this reply in support of its motion for summary judgment.

**A.   There Has Been No Substantial Impairment To The Structural Integrity Of The Basement Walls During a Liberty Policy:**

The plaintiffs pled that a substantial impairment to the structural integrity of their basement walls occurred "at some point" between 1990 and July of 2012 (**Ex. C,** ¶13). Their memorandum of law in opposition to the defendant's motion for summary judgment ("opposition") reaffirms this stance. However, it is more than four (4) years after the latest date that this "collapse" supposedly occurred and it is status quo at the home. They have not relocated (**Ex. K**, p. 40). Mr. Roberts has not noticed any progression of cracking and the Robertses have not attempted to track any progression since 2012 (**Ex. K**, pp. 45 and 52, **Ex. DD**, p. 34). Mrs. Roberts testified that their ability to live in the living area of the home has not been affected by the condition of the basement walls (**Ex. DD**, p. 33).

ORAL ARGUMENT IS REQUESTED

The plaintiffs claim on page 7 that the foundation walls are so impaired that they are incapable of supporting the wooden portion of the home. This is contrary to the plaintiffs' testimony (**Ex. K**, p. 40, **Ex. DD**, p. 33).  It is contrary to Mr. Grandpre's testimony.  Mr. Grandpre inspected the property on June 24, 2013 (**Ex. BB**).  Mr. Grandpre testified on January 26, 2016 that in **_all_** of the supposedly failed concrete foundations claims he's inspected, the concrete walls were still supporting the house above it and that he has yet to see a case where the concrete degraded to a point where it was no longer holding up the house (**Ex. M**, p. 104).  He is not aware of any properties where the living structure collapsed into the basement (**Ex. M**, p. 105).  He is not aware of any properties where the walls actually caved in (**Ex. M**, p. 105).  Mr. Grandpre testified that it would take inches of movement before a wall was about to actually fall down (**Ex. M**, p. 108). In his opinion, the significant movement necessary to lead to an unsafe condition and an actual falling down would be able to be flagged by an average homeowner (**Ex. M**, p. 107-108, **Ex. I**, p. 54). According to Mr. Grandpre, the plaintiffs have not had to relocate, the basement walls do not need to be shored up, he does not have a ballpark estimate as to when the basement walls will fall, and it is not unsafe to live in the home (**Ex. I**, pp. 54-55).  Thus, there has been no substantial impairment.  It does not matter that the cracks are uncharacteristic of "ordinary concrete", as claimed on page 6.  Cracking is excluded from coverage.

The undefined policy term "collapse" includes coverage for any substantial impairment to the structural integrity of a building.[1]  *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. at 252.  However, the Connecticut Supreme Court has yet to articulate what is meant by a "substantial impairment to the structural integrity of a building."[2]

The Ninth Circuit Court of Appeal recently certified the question of how to define the undefined policy term "collapse" to the Washington Supreme Court, which held that "collapse" means "substantial impairment to the structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe." *Queen Ann Park Homeowners Ass'n. v. State Farm Fire and Cas. Co.*, 352 P. 3d 790, 791 (Wash. 2015).  The "substantial impairment" must be one that is "so severe as to materially impair a building's ability to remain upright."  *Queen Ann*, 352 P. 3d at 794.  In so ruling, the court noted that the policy at issue—like Liberty's here—had specific language excluding "settling, cracking, shrinking, bulging, or expansion" from its definition of "collapse" so that a "substantial impairment" must mean something more than these excluded phenomenon.  *Id.* at 794. *See also, Fantis Foods, Inc. v. North River Ins. Co.*, 732 A.2d 176, 183 (N.J. App. Div. 2000)(collapse means "any serious impairment of structural integrity that connotes

---

[1] Liberty maintains that basement walls are not part of the building. *See, Shoemaker v. Liberty Mut. Ins. Co.*, 17 Mass.L.Rptr. 57 (Mass. Super. Ct. 2003)

[2] In *Beach*, the uncontested facts were inapposite: there was a nine-inch wide crack in the north foundation wall, "wooden support beams on top of the foundation wall had pulled apart," and "the foundation wall had tipped over into the basement from the top and was no longer supporting the house." *Id.* at 248-249.  The trial court concluded that the home "was in imminent danger of falling over." *Id.* at 249.

imminent collapse threatening the preservation of the building as a structure or the health and safety of occupants and passers-by.").

The Ninth Circuit Court of Appeal held that it was "simply implausible" that walls had "collapsed" when a 1998 policy was in effect given that the walls were still standing in 2015. *Queen Ann Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 633 Fed.Appx. 415 (9th Cir. 2016). *See also, Am. Econ. Ins. Co. v. CHL, LLC,* 2016 WL 3632488 (W.D. Wash. 2016)( implausible that there was a severe ability in a building's ability to remain upright between 1999 and 2002 when the building remained standing in 2014).

It is simply implausible that a "collapse" occurred between October 9, 2007 and July of 2012. There has been no material impairment in the building's ability to remain upright. The plaintiffs have safely and continuously lived at the home from 1990 through the present date, over four years after the latest date that their foundation supposedly "collapsed."

Mr. Grandpre prepared an affidavit concerning his understanding of the iron sulfide oxidation process (**Ex. P**) and testified that basement walls afflicted with concrete wherein the iron sulfide oxidation process was unfolding would suffer a substantial impairment to their structural integrity between ten-to-fourteen years after pour (**Ex. M**, p. 100-103). His opinion fits the timeline for when a homeowner would notice a "tremendous amount of cracks and discoloration in the foundation." *Tofolowsky*, 2003 WL 1475141 at 1 (foundation constructed in 1984, cracking noticed in 1993, tremendous amount of significant cracking noticed in 1995). Contrary to the claims on page 21, Mr. Grandpre did not limit his

4

testimony to an analysis of other properties. He testified as to his experiences observing the mineral phenomenon which is unfolding in concrete foundation walls.

Mr. Grandpre testified that his experience is that concrete walls afflicted by this process would have the problem present itself within ten-to-fourteen years after pour (**Ex. M**, p. 103). Mrs. Roberts testified that her basement has never been finished and the wall in which the cracking was supposedly first noticed was never obscured by shelving (**Ex. DD**, p. 13, 23). Thus, even assuming that a substantial impairment occurred (which Liberty denies) and even according to the manifestation theory proffered on page 22, manifestation did not occur during a Liberty policy, as this problem was "reasonably capable of diagnosis" between 2000 and 2004, several years before the initial Liberty policy. The plaintiffs' citations on page 22 to a multiple injury trigger are inapposite. *United Technologies, Inc. v. American Home Assur. Co.*, 989 F.Supp. 128 (D.Conn. 1997) concerned long-term and repeated hazardous waste disposal practices. *Travelers Cas. and Sur. Co. of America v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (2014) concerned a duty to defend, which the Connecticut Supreme Court explicitly stated is "broader than the duty to indemnify."

There is a sharp contrast between the damages in matters wherein appellate courts have found that a substantial impairment to structural integrity has occurred and here. Only an attorney would consider walls which remain plumb (**Ex. G**, p. 2) and which continue to support the living area of the home so that the homeowners can safely live in it for several

years after the fact to have "collapsed." No substantial impairment to structural integrity occurred during a Liberty policy between October 9, 2007 and July of 2012.

### B. Loss To A Foundation and Retaining Wall Is Excluded:

The "collapse" provision excludes coverage for loss to a foundation and a retaining wall caused by hidden decay or use of defective materials or methods in construction unless it is the direct result of the collapse of a building. The described problem is not "hidden." *Wurst v. State Farm Fire and Cas Co.*, 431 F. Supp. 2d 501, 505 (D. N.J. 2006). Furthermore, "it is open to doubt whether defective concrete could be called decay." *Parker v. Worcester Ins. Co.*, 247 F. 3d 1, 6 (1st. Cir. 2001). The undefined policy term "foundation" within the collapse provision includes the basement walls. *See, Wurst*, 431 F.Supp.2d at 502; *Shoemaker v. Liberty Mut. Ins. Co.*, 17 Mass.L.Rptr. 57 (Mass. Super. Ct. 2003).

The plaintiffs' citation to *Campbell v. Norfolk & Deham Mut. Fire Ins. Co.*, 682 A. 2d 933 (R.I. 1996) is not instructive. The trial court in *Campbell* granted summary judgment for the insurer. The Rhode Island Supreme Court overturned the decision on public policy grounds to obviate potential economic waste. *Campbell*, 682 A.2d at 936. This court has rejected such public policy arguments when construing contractual terms (See transcript of hearing on motion to dismiss complaint in *Alexander v. General Ins. Co. of America*, Civil Case No. 3:16-cv-00059 (SRU), attached as **Exhibit Q**, pp. 7 and 20-21).

Furthermore, the Rhode Island Supreme Court was interpreting a different legal and factual scenario. The insurer conceded that foundation is part of a building and argued that

"complete destruction" was needed before losses would be covered.  Liberty does not agree that foundation is part of a building and recognizes that "collapse" when undefined includes substantial impairment to the structural integrity of a building.  In any event, *Campbell* involved a nineteen-foot section of the foundation wall which collapsed and crumbled into rubble in the basement, thereby rendering the house uninhabitable.  *Id.* at 934.  More than anything, *Campbell* provides further support that no "collapse" has occurred here.

The plaintiffs devote a great deal of space in their opposition to *Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016 (D. Conn. 2015), a decision that this court has inferred may have been wrongly decided. *Roberge v. Amica*, 2015 WL 9480008 (D. Conn. 2015).

On page 15, the plaintiffs claim that a retaining wall is "commonly understood" to be a wall at the edge of a terrace and that "[s]uch a construction would be far more in line with the "colloquial understanding" of a retaining wall.  They provide no support for these conclusory statements.  The Supreme Court in *Beach*, 205 Conn. at 255 did not share this "colloquial understanding" when they repeatedly referred to a basement wall as a "retaining wall."  Furthermore, the plaintiffs cited the same dictionary definition which Liberty cited that refutes their claim of ambiguity.  The plaintiffs tremendous weight on a britannica.com article which can be edited by random online users and which was, in fact, last edited by a random poster named "abdessamade hafoud" on July 24, 2012.  The article's entire editing history is not displayed.  This article does not trump all cited dictionaries and the understanding of retaining wall expressed by the Connecticut Supreme Court.

### C. Extrinsic Evidence Is Properly Considered:

The plaintiffs erroneously claim on page 17 that extrinsic evidence cannot be considered on a motion for summary judgment based upon *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F. 3d 82 (2nd Cir. 1998), a decision the court explicitly stated was decided under New York law. Conversely, in Connecticut, "[i]f the policy is ambiguous, extrinsic evidence may be introduced to support a particular interpretation. If the extrinsic evidence presents issues of credibility or a choice among reasonable inferences, the decision on the intent of the parties is a job for the trier of fact ....[internal citations omitted]." *Metro Life Ins. Co. v. Aetna Cas. and Sur. Co.*, 255 Conn. 295, 306 (2001); *Fiallo v. Allstate Ins. Co.*, 138 Conn.App. 325, 341 (2012); *Connecticut Ins. Guar. Ass'n. v. Fontaine*, 278 Conn. 779, 788 (2006).

There is no issue of credibility or choice among reasonable inferences. The Office of the Attorney General's consumer protection report on this issue concerns "crumbling concrete home foundations." (**Exhibit R)**. The Department of Consumer Protection refers to the issue as "crumbling concrete foundations." (**Exhibit S**). A recently-enacted statute repeatedly refers to this issue as concerning the "foundation" and was titled "An Act Concerning Concrete Foundations." (**Exhibit T**). This statute cannot serve its purpose if the basement walls are not the foundation. The Connecticut Department of Insurance's ("DOI") October 6, 2015 notice to all insurers regarded "crumbling foundations." If "foundation" refers only to footings then the DOI notice which directed that policies cannot be cancelled

for "crumbling foundations" similarly cannot serve its purpose (**Exhibit U**).  Prior rulings regarding ambiguities in the terms "foundation" and "retaining wall" should be revisited so as to not frustrate the clear intent of recent legislation and DOI directives.

 Furthermore, Mr. Roberts testified that he considers his basement walls to be part of his foundation (**Ex. K**, p. 57).  The subsequent testimony elicited from the plaintiffs by their counsel was not proper practice, was objected to, and should not be considered, as it was tantamount to plaintiffs' counsel himself testifying.  *See, Ornberg v. Butler*, 2014 WL 1190085 (Conn. Super. 2014); *Oberlin v. Marlin American Corp.*, 596 F. 2d 1322 (7th Cir. 1979).  The same can be said for Mrs. Roberts' self-serving affidavit executed four months subsequent to Mr. Roberts' testimony (**Ex. EE**).

 The plaintiffs are not strangers to the construction industry.  Mr. Roberts was involved in the construction of his property and has a familiarity with construction from his work as a carpenter (**Ex. K**, pp. 21-22).  Mrs. Roberts was involved with the construction of the property, including designing the blueprints (**Ex. DD**, p. 20).  Their experts have testified that foundation walls are considered the foundation in the construction and engineering industries (**Ex. I**, p. 71, **Ex. J**, pp. 18, 23, 35, 39, **Ex. M,** pp. 70-71). The plaintiffs consulted with Northeast Foundation Coating personnel regarding cracks in their basement wall, not cracks in their footings (**Ex. K**, pp. 58-59).  The plaintiffs' feigned naiveté as to the meaning of "foundation" should not be countenanced by this court.

**D.      The Extra-Contractual Counts Are Baseless:**

Mr. Berry opined that the walls are plumb (**Ex. G**, p. 2) and Liberty relied on his evaluation in denying the claim (**Ex. H**).  While the plaintiffs assail Mr. Berry's reputation on page 26, he objectively analyzed the structural integrity of the foundation walls sans the influence of a novel coverage theory.  Only an interested attorney would consider a "collapse" to have occurred under this factual scenario. On page 26, the plaintiffs suggest that it is too much for Liberty to expect them to provide all relevant information concerning the novel claim formulated by their attorneys and their usual experts, Mr. Soucy and Mr. Grandpre.  The plaintiffs kept their "collapse" theory under wraps until litigation in order to "up the ante" with extra-contractual counts.  The facts in *Beach* are inapposite and the "collapse" provision at issue was different.  No appellate court has held that a "collapse" occurred under this factual scenario.  The Washington Supreme Court recently rejected this coverage theory.  This claim was investigated, evaluated, and denied in good faith.

On page 29, the plaintiffs leave out *Alexander* when rattling off the list of lawsuits their attorneys have brought. *Alexander* contained the same baseless extra-contractual counts as the plaintiffs' complaint and Judge Underhill dismissed the Alexanders' lawsuit with prejudice (**Ex. Q**, pp. 22-24).  *Alexander* is a reminder of the inappropriateness of pending lawsuits serving as a proffered basis for extra-contractual liability, particularly where the denial at issue enjoys substantial factual and case law support.

10

        DEFENDANT,
        LIBERTY MUTUAL FIRE INSURANCE
        COMPANY

        By __/s/ Kieran W. Leary_____
           Philip T. Newbury, Jr. (ct05283)
           Kieran W. Leary (ct29484)
           Howd & Ludorf, LLC
           65 Wethersfield Avenue
           Hartford, CT  06114-1121
           (860) 249-1361
           (860) 249-7665 (Fax)
           E-Mail:  pnewbury@hl-law.com
           E-Mail:  kleary@hl-law.com

## **CERTIFICATION**

      This is to certify that on **September 2, 2016**, a copy of the foregoing **Reply In Support of Motion For Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Michael D. Parker, Esquire
Jeffrey R. Lindequist, Esquire
One Monarch Place
Suite 2220
Springfield, MA  01144
**(413) 736-4101**
**(413) 736-4582 fax**
**mparker@mdparkerlaw.com**
**jlindequist@mdparkerlaw.com**

        ___/s/ Kieran W. Leary_____
        Kieran W. Leary