UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| MICHAEL ROBERTS AND ANNETTE ROBERTS | : <br> : <br> :    NO. 3:13-CV-00435 (SRU) |
| Plaintiffs, | : <br> : |
| V. | : <br> : |
| LIBERTY MUTUAL INSURANCE COMPANY, | :    DECEMBER 5, 2016 <br> : |
| Defendant. | : |

---

### *AMICUS CURIAE* BRIEF OF THE STANDARD FIRE INSURANCE COMPANY, THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT AND THE TRAVELERS INDEMNITY COMPANY OF AMERICA REGARDING POTENTIAL CERTIFICATION OF QUESTIONS OF LAW TO THE CONNECTICUT SUPREME COURT

With the permission of the Court as stated on the record of the hearing on November 10, 2016, The Standard Fire Insurance Company, The Automobile Insurance Company of Hartford, Connecticut, and The Travelers Indemnity Company of America (collectively, "Amici") respectfully submit this *amicus curiae* brief to address: (a) whether the Court should certify questions of law to the Connecticut Supreme Court; and (b) if so, what questions the Court should certify.

There are two questions of law that appear to be squarely presented in this case and also applicable to numerous other pending cases in Connecticut federal and state courts:

1) Where an insurance policy does not define the term "collapse," in order to establish the existence of a "collapse" under the "substantial impairment of structural integrity" standard set forth in *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 252 (1987), must a plaintiff prove that the claimed structural impairment has rendered the insured

building, or a part thereof: (1) in imminent danger of falling down; or (2) unsafe to occupy for its intended purpose? If not, how should a court instruct a jury regarding the meaning of "substantial impairment of the structural integrity of a building" as that phrase is used in *Beach*?

2) Under a homeowners' insurance policy's "Additional Coverage" for "Collapse" that provides that "[l]oss to [a] . . . foundation, [or] retaining wall" is not covered "unless the loss is a direct result of the collapse of a building," does the term "foundation" or "retaining wall" include the concrete basement walls of the structure, or only the concrete footings immediately underneath the basement walls?

Amici contend that there is ample guidance in existing precedent for this Court to conclude the Connecticut Supreme Court would answer the threshold question of law posed in Question No. 1 in the affirmative, and therefore grant summary judgment in favor of Liberty Mutual Insurance Company ("Liberty Mutual"). If, however, the Court believes it has insufficient guidance to answer Question No. 1 in the affirmative, it should certify Question No. 1 to the Connecticut Supreme Court. If Question No. 1 is certified, Amici also believe that Question No. 2 should be certified to the Connecticut Supreme Court.[1]

---

[1] Amici do not seek certification of the question of when a property loss occurs for purposes of triggering coverage under the Liberty Mutual policy at issue, which provides that it "applies only to loss in Section I . . . which occurs during the policy period." This case does not appear to be an appropriate vehicle for certifying such a question to the Connecticut Supreme Court.

2

I. **ALTHOUGH THE COURT HAS AMPLE BASIS TO PREDICT THAT THE CONNECTICUT SUPREME COURT WOULD ANSWER THE THRESHOLD QUESTION OF LAW POSED IN QUESTION NO. 1 IN THE AFFIRMATIVE, IF THE COURT BELIEVES THE ANSWER IS NOT SUFFICIENTLY CLEAR, QUESTION NO. 1 SHOULD BE CERTIFIED**

   A. **This Court Should Grant Summary Judgment In Favor Of Liberty Mutual Without Certification to the Connecticut Supreme Court**

Amici's prior brief (Doc. 86-1) explained at length how the Connecticut Supreme Court's decision in *Beach*, when read in the context of its facts, the cases from other jurisdictions that the Connecticut Supreme Court found persuasive and relied upon in *Beach*, and persuasive cases nationwide following *Beach*, all point strongly to the conclusion that the requisite "substantial impairment of structural integrity" occurs only where the impairment has rendered the structure (or part thereof) unfit[2] or unsafe to occupy for its intended purpose, or in imminent danger of falling down. All of the cases relied upon by the Connecticut Supreme Court in *Beach* involved structures that appeared to be unsafe to occupy, or in imminent danger of falling down. (*See* Doc. 86-1, at 5-7.) This is also consistent with standards adopted by state supreme and appellate courts in other jurisdictions following *Beach*, with many of those decisions relying in part on *Beach*. (*See id.* at 8-11.) This Court thus has ample grounds to predict that the Connecticut Supreme Court would rule that in order to establish existence of the requisite "substantial impairment of structural integrity," a plaintiff must prove that the claimed structural impairment has rendered the insured building, or a part thereof: (1) in imminent danger of falling down; or (2) unsafe to occupy for its intended purpose. Consequently, in this case, the Court should apply that burden and grant Liberty Mutual's motion for summary judgment without the need for certification to the Connecticut Supreme Court. *See*, *e.g.*, *Beck Chevrolet Co. v. GM LLC*, 787

---

[2] Courts addressing the issue appear to have essentially conflated a lack of fitness for occupancy with safety for purposes of occupancy, and thus Amici have proposed in the wording of the proposed certified question a focus on safety for occupancy.

3

F.3d 663, 678 (2d Cir. 2015) (certification to state's highest court was not appropriate where the court was "confident that we can correctly resolve this question without certification"); *Doyle v. Am. Home Prods. Corp.*, 583 F.3d 167, 172 (2d Cir. 2009) (certification was not necessary where there was "more than ample foundation for our ruling" in state law).

    **B.    If the Court Believes It Lacks Sufficient Guidance to Resolve the Threshold Question of Law Presented in Question No. 1, It Should Certify Question No. 1 to the Connecticut Supreme Court**

If, however, this Court does not believe it has sufficient guidance to answer Question No. 1, it should certify that question to the Connecticut Supreme Court. This Court may certify a question of law to the Connecticut Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d); *see also Cadle Co. v. Fletcher*, 804 F.3d 198, 202 (2d Cir. 2015). These requirements are readily satisfied with respect to Question No. 1. If the answer to that question is that a building has not sustained a "substantial impairment of structural integrity" where it remains standing, remains safe to occupy, and is not in imminent danger of falling down, that ruling will be dispositive of the breach of contract claim in this case, and should also readily dispose of the other claims because where there is no breach of the insurance policy, there can be no breach of the implied covenant of good faith and fair dealing, and no violation of the Connecticut Unfair Insurance Practices Act or Connecticut Unfair Trade Practices Act.[3] There is no "controlling appellate decision" within

---

[3] *See*, *e.g.*, *Alexander v. General Ins. Co. of America,* No. 3:16-cv-0059 (D. Conn.), transcript of summary judgment ruling, at 24 ("quite simply, without coverage there can't be bad faith or a violation of either of those consumer statutes"); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013) ("bad faith is not actionable apart from a wrongful denial of a benefit under the policy"); *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (where defendant's interpretation of insurance policy was correct, there was no CUIPA/CUPTA violation).

the meaning of § 51-199b(d) if this Court concludes that *Beach* does not provide a clear answer to Question No. 1.

If the Connecticut Supreme Court concludes that it cannot answer the threshold question of law presented Question No. 1 in the affirmative, this Court still will need guidance on how to instruct a jury regarding a plaintiff's burden of proof, in order to avoid the potential need for multiple re-trials in these concrete foundation cases. As this Court has previously noted, it would provide a jury with inadequate guidance to simply instruct them that a "substantial impairment of structural integrity" is a "collapse" without any elaboration as to what that phrase means, or how to apply it to a particular set of facts. Without more, such instructions could lead to conflicting results in cases involving very similar facts.

      **C.**    **If the Court Certifies Question No. 1, It Must Provide the Connecticut Supreme Court with a Statement of the Relevant Facts**

The Connecticut statute governing certification of questions of law to the Connecticut Supreme Court provides that "[a] certification order must contain: (1) The question of law to be answered; (2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose; (3) That the receiving court may reformulate the question; and (4) The names and addresses of counsel of record and unrepresented parties." Conn. Gen. Stat. § 51-199b(f). "If the parties cannot agree upon a statement of facts, then the certifying court shall determine the relevant facts and shall state them as a part of its certification order." *Id.* § 51-199b(f).

Based on Amici's review of the summary judgment record in this case, Amici respectfully submit that the facts relevant to Question No. 1 are as follows:

1. The home of Michael and Annette Roberts, located at 34 Hopyard Road, Stafford Springs, CT (the "home"), was insured under a homeowners' insurance policy issued by Liberty Mutual from October 9, 2012 through October 9, 2013 (the "Policy"). (Doc. 79, ¶ 1, at pp. 1-2.)

2. The Policy contains the following relevant provisions:

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

**1.** Involving collapse, other than as provided in Additional Coverage **8.**;

**2.** Caused by:
. . .
**e.** Any of the following:
   . . .
   **(3)** . . . rust or other corrosion;
   . . .
   **(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings.

\* \* \*

**ADDITIONAL COVERAGES**

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in Coverage C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation;

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

\* \* \*

6

**SECTION I – EXCLUSIONS**

. . .

  **2.**  We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

    . . .

    **c. Faulty, inadequate or defective:**

      . . .

      **(3)** Materials used in repair, construction, renovation or remodeling; . . .

    of part or all of any property whether on or off the "residence premises."

(Doc. 79, at 7-11.)

3. The basement walls of the Roberts' home exhibit cracking caused by the oxidation of iron sulfide materials within the aggregate. (Doc. 79, ¶ 23, at pp. 5-6; Doc. 74-11, Ex. K, pp. 24-25, 28; Doc. 78-4, Ex. DD, pp. 12-13, 25-26.) Mr. and Mrs. Roberts have not noticed any bulging or bowing of the basement walls. (Doc. 74-11, Ex. K, p. 47; Doc. 78-4, Ex. DD, p. 39.) Plaintiffs' expert witness, David Grandpre, has observed what he has described as "bowing and bulging" and "expansion" of the basement walls. (Doc. 74-9, Ex. I, pp. 21, 25-26.)

4. The Roberts' ability to live in the living area of their home has not been affected by the condition of the basement walls. (Doc. 78-4, Ex. DD, p. 33.) The Roberts have not moved out of their home. (Doc. 74-11, Ex. K, p. 40; Doc. 78-4, Ex. DD, pp. 32-33.)

5. According to the Roberts' expert witness, Mr. Grandpre, the basement walls of the home continue to support the house above, the basement walls do not need to be shored up and do not require imminent replacement, the house remains safe to live in, and the house is not in imminent danger of falling down. Mr. Grandpre believes that the house will eventually fall down if the basement walls are not replaced, but he cannot estimate how long that will take. (Doc. 74-9, Ex. I, pp. 53-55; Doc. 74-13, Ex. M, pp. 104-08.)

## II.   IF QUESTION NO. 1 IS CERTIFIED TO THE CONNECTICUT SUPREME COURT, QUESTION NO. 2 SHOULD ALSO BE CERTIFIED

If this Court certifies Question No. 1, it should also certify Question No. 2, as follows:

Under a homeowners' insurance policy's "Additional Coverage" for "Collapse" that provides that "[l]oss to [a] . . . foundation, [or] retaining wall" is not covered "unless the loss is a direct result of the collapse of a building," does the term "foundation" or "retaining wall" include the concrete basement walls of the structure, or only the concrete footings underneath the basement walls?

This question is a pure question of law that readily satisfies the requirements for certification— "the answer may be determinative of an issue in pending litigation in the certifying court," and "there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). No Connecticut appellate court has addressed this question. If the Connecticut Supreme Court were to conclude that a concrete basement wall constitutes a "foundation" or "retaining wall," it appears that there would be no coverage under the Liberty Mutual policy in this case, because all of the claimed damage is to the basement walls, and there is no contention that a collapse of the building caused damage to the basement walls. If there is no coverage under the policy, there also could be no viable cause of action for bad faith or violation of CUIPA and CUTPA. *See* fn. 2 above. If the Connecticut Supreme Court were to decide this question in favor of Liberty Mutual's position, such a ruling would also likely be dispositive of numerous other pending cases in this Court and the Connecticut Superior Court involving crumbling basement walls. Such a ruling would save the parties and judicial system from the need to conduct time-consuming litigation in dozens of cases.

Although there have been several decisions by judges of this Court finding the term "foundation" to be ambiguous with respect to whether it includes basement walls or only the footings, including *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 115 (D. Conn. 2014)

(Underhill, J.), there are ample grounds to support Liberty Mutual's position. The Connecticut Supreme Court has instructed that "insurance contracts must be construed as laymen would understand [them] . . . ." *Vt. Mut. Ins. Co. v. Walukiewicz*, 290 Conn. 582, 592 (2009). A typical homeowner would refer to their basement walls and floor slab as the "foundation" of their home. Many homeowners not knowledgeable about the nuances of construction are likely not even aware of the existence of buried footings beneath the basement walls. Many would not even know what a "footing" is. A recently enacted Connecticut statute repeatedly uses the term "foundation" in describing precisely the same problem at issue here. Conn. Pub. Act. 16-45, § 2 ("Any owner of a residential building who has obtained a written evaluation from a professional engineer licensed pursuant to chapter 391 of the general statutes indicating that the <u>foundation</u> of such residential building was made with defective concrete may provide a copy of such evaluation to the assessor and request a reassessment of the residential building by the assessor.") (emphasis added); *id.*, § 3 (requiring the Commissioner of Consumer Protection to submit a report to the General Assembly "on the potential cause or causes of failing concrete <u>foundations</u>") (emphasis added). Judge Eginton has noted that an insurer "may have a strong argument in its favor" on this issue. *Roberge v. Amica Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 172424, *7 (D. Conn. Dec. 29, 2015). That issue should be resolved by the Connecticut Supreme Court before the parties and the court system devote extensive efforts to resolving all of the other issues in these cases, which may not need to be decided if Question No. 2 is resolved in favor of Liberty Mutual.

      Certification of this pure question of law does not appear to require any significant recitation of facts for the Connecticut Supreme Court, other than quoting the applicable policy provision (quoted in Section I above), explaining that the Roberts' house is supported by

concrete basement walls that have footings below them (Doc. 74-9, Ex. I, pp. 71-72), and explaining that there is no claim that the concrete basement walls of the Roberts' home were damaged as a direct result of a collapse of the building.

## CONCLUSION

The Court should either grant summary judgment in favor of Liberty Mutual on Question No. 1, or if the Court believes necessary, certify that question to the Connecticut Supreme Court. If Question No. 1 is certified, the Court should also certify Question No. 2.

THE STANDARD FIRE INSURANCE COMPANY, THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT AND THE TRAVELERS INDEMNITY COMPANY OF AMERICA

By: /s/ Wystan M. Ackerman
Wystan M. Ackerman (ct24090)
E-mail: wackerman@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Wystan M. Ackerman